**In re William D. PUGH and Elizabeth Pugh, Debtors.**

**William D. PUGH and Elizabeth Pugh, Appellants,**

**v.**

**V. John BROOK, Jr., Trustee, Appellee.**

**No. 96–765–CIV–T–17E.**

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 18, 1996.

---

6. *See* 28 U.S.C. § 157(c).

Buddy D. Ford, Burns, Ford & Kiesten P.A., Tampa, FL, Joel Sidney Treuhaft, Joel S. Treuhaft, P.A., Palm Harbor, FL, for appellants.

Allan C. Watkins, Watkins Law Firm, P.A., Tampa, FL, for appellee.

## ORDER ON APPEAL

KOVACHEVICH, District Judge.

This cause is before the Court on the following order, briefs, and responses:

1. The United States Bankruptcy Court's final judgment on Adversary Proceeding 95–505, entered on March 6, 1995 ("Order");

2. Initial brief for Appellants William D. Pugh and Elizabeth Pugh ("Appellants") appeal from the Order of the United States Bankruptcy Court of the Middle District of Florida, Tampa Division (Dkt. 6);

3. Response brief of Appellee V. John Brook, Jr., Trustee ("Appellee") (Dkt. 8).

## FACTUAL BACKGROUND

Appellants own and operate a chicken ranch (hereinafter "Ranch") in Plant City, Florida. Pre-petition, Appellants defaulted on the mortgage on the Ranch held by Sun Bank of Polk County, Florida. Subsequently, Sun Bank initiated a foreclosure action. On September 17, 1991, the Polk County Circuit Court entered a Summary Final Judgment in favor of Sun Bank in the amount of $715,902.12.

On September 27, 1991, Appellants filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Appellants' pre-petition assets included proceeds from a personal injury settlement in the net amount of $75,000. On September 13, 1991, Appellants used the pre-petition settlement proceeds to purchase two separate life insurance company annuities with a purchase price of $37,500 each, for a cumulative total worth of $75,000. In addition, the Appellants' pre-petition assets included a breach of contract claim against Zephyrhills Egg Company (hereinafter "Zephyr"). Appellants' action against Zephyr was pending at the time

of their petition for relief under the Bankruptcy Code.

Appellants did not disclose their $75,000 proceeds from the personal injury settlement. Appellants also did not disclose the pendency of the Zephyr claim as required. Further, Appellants did not disclose the pre-petition purchase of the insurance annuities worth $75,000 with the proceeds of the personal injury settlement. Appellants sought the Court's approval of the proposed settlement with Sun Bank, which was granted; however, Appellants did not obtain Court approval to use proceeds from the insurance annuities to satisfy a pre-petition debt to Sun Bank. On January 15, 1992, the Bankruptcy Court denied the automatic stay, and approved the settlement between the Appellant and Sun Bank. Appellants paid Sun Bank the settlement using funds from the insurance annuities.

On February 5, 1992, Appellants filed a Notice of Voluntary Conversion to Chapter 7. On February 12, 1992, the Bankruptcy Court entered an Order converting Appellants' case to a Chapter 7, and appointed Appellee as trustee. On April 3, 1992, Appellants filed a Notice of Filing Amended Schedule C—Property Claimed as Exempt (Dkt. 20A). Appellants stated the value of the insurance annuities as "zero." In addition, Appellants listed the value of the Zephyr claim as undetermined and exempt.

Within thirty days of filing Amended Schedule C, Appellants and Zephyr reached a settlement. The settlement consisted of a 70/30 division of the net proceeds after costs and attorney fees. Neither party sought court approval of the compromise. In January, 1993, without court approval, Appellants settled the Zephyr claim for the gross amount of $100,000. (Dkt. 20A). On January 20, 1993, Appellants received the Zephyr Claim net proceeds in the amount of $63,-310.80. (Dkt. 20A, Exh. 8 & 9) Subsequently, Appellants replaced the $50,000 from the insurance annuities that was used to satisfy Sun Bank. Appellants did not turn over the proceeds of the Zephyr claim to Appellee.

On January 23, 1993, Appellee filed an Amended Motion for Order to Show Cause (Dkt. 20A). On March 24, 1994, the Bankruptcy Court entered an Order discharging the Order to Show Cause (Dkt. 20A). Furthermore, the Bankruptcy Court concluded that Appellants had a conclusive right to the Zephyr claim's proceeds.

Appellee discovered that the Amended Schedule C was never served on the parties in interest. Therefore, Appellee filed a Motion to Strike Amended Schedule C (Dkt. 20A). On July 26, 1994, the Bankruptcy Court entered an Order Granting Appellee's Motion to Strike. On August 30, 1994, Appellants filed a Second Amended Schedule C. As a result, Appellants' creditors made several objections. On January 17, 1995, the Bankruptcy Court entered an order which disallowed Appellants' claim of exemption of the Zephyr claim. Furthermore, the Court declared that the proceeds from the Zephyr claim were property of the bankruptcy estate (Dkt. 20A).

Subsequently, Appellee initiated an Adversary Proceeding 95–505 by filing a complaint which sought the turnover of the Zephyr claim proceeds. On September 18, 1996, Appellants filed their Answer and Affirmative defenses. Appellants did not raise a statute of limitations defense in their initial response to Appellee's complaint. On March 6, 1996, the Bankruptcy Court entered a Final Judgment in favor of the Appellee's turnover complaint, and ordered the Appellants to turn over $44,317.56 to the Appellee. On March 18, 1996, Appellants filed a Notice of Appeal with the Bankruptcy Court (Dkt. 20A).

## STANDARD OF APPELLATE REVIEW

Jurisdiction over appeals from the final judgment, orders and decrees of the Bankruptcy court is vested in the Federal District Courts. 28 U.S.C. Section 158(a).

■ The district court is bound by the findings of fact made by the bankruptcy court unless it determines them clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. The burden is on the appellant to show that the Bankruptcy Court's factual findings are clearly erroneous. Fed.R.Bankr.P. 8013; *In re Downtown Properties, Ltd.,* 794 F.2d 647

(11th Cir.1986). Furthermore, Appellant is entitled to an independent de novo review of all conclusions of law and the legal significance accorded to the facts. *In re Owen,* 86 B.R. 691 (M.D.Fla.1988).

### DISCUSSION

Appellants raise two issues in this case: (1) that the bankruptcy court did not have subject matter jurisdiction to consider Adversary Proceeding 95–505; and (2) that the Appellant is barred by 11 U.S.C. Section 546(a), or otherwise, from commencing or maintaining Adversary Proceeding 95–505 due to the fact that it was filed forty-one months after Appellee's appointment. The Court will address each argument in turn.

### I. Subject Matter Jurisdiction

██ Appellants raise the issue that the Bankruptcy Court did not have subject matter jurisdiction to consider Adversary Proceeding 95–505; however, Appellants have not presented argument in support of their contention. Therefore, the Court finds it unnecessary to entertain this point on appeal. Furthermore, after a thorough examination, the Court finds that Appellants' assertion that the Bankruptcy Court did not have subject matter jurisdiction to hear Adversary Proceeding 95–505 is without merit.

### II. Statute of Limitations

The thrust of Appellants' second argument is that Appellee is barred by 11 U.S.C. Section 546, or otherwise, from commencing or maintaining Adversary Proceeding 95–505. Appellee contends that since Appellants failed to raise the statute of limitations found in 11 U.S.C. Sec 546(a) or 549(d) (hereinafter "Code Provisions") as an affirmative defense in their Answer and Affirmative Defenses to Appellee's Complaint, this omission resulted in a waiver of the defense. The Code Provisions state, in pertinent part:

11 U.S.C. Sec. 546(a): An action or proceeding under Section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of (1) two years after the appointment of a trustee ... or (2) the time the case is closed or dismissed.

11 U.S.C. Sec. 549(d): An action or proceeding under this section may not be commenced after the earlier of (1) two years after the date of transfer sought to be avoided, or (2) the time the case is closed or dismissed.

Every court that has considered this issue has determined that the only distinction between the two Code Provisions is when the two year period begins to run. *Matter of Texas General Petroleum Corp.,* 52 F.3d 1330, 1338, n. 10 (5th Cir.1995). Therefore, for the purposes of determining whether the two Code Provisions serve as a statute of limitations or a jurisdictional bar, they will be treated the same.

First, the Court must determine whether the Code Provisions serve as a statute of limitations or, as some courts have found, a jurisdictional bar. *In re Butcher,* 829 F.2d 596 (6th Cir.1987), *cert. denied,* 484 U.S. 1078, 108 S.Ct. 1058, 98 L.Ed.2d 1020 (1988); *see also In re Frascatore,* 98 B.R. 710 (Bankr.E.D.Pa.1989); *In re Oro Import Co., Inc.,* 52 B.R. 357 (Bankr.S.D.Fla.1985), *rev'd on other grounds,* 69 B.R. 6 (S.D.Fla.1986). If the Code Provisions are a statute of limitations, then an affirmative defense must have been raised in Appellants' responsive pleadings to Appellee's complaint. However, if the provisions serve as a jurisdictional bar, then the Bankruptcy Court was without jurisdiction to hear the adversary case as long as the time period had expired.

██ In *Matter of Texas General Petroleum Corp.,* 52 F.3d at 1338 (citing *In re M & L Business Machines, Inc.,* 153 B.R. 308, 311 (D.Colo.1993)), the court found that section 546(a) constitutes a statute of limitations that can be waived. Another court added that "[g]iven the legislative history ... this court finds no reason to interpret Sec. 546(a) as a jurisdictional grant." *In re Shape, Inc.,* 138 B.R. 334, 337 (Bankr.Me.1992). In light of the language of the Code Provisions and their legislative history, this Court respectfully disagrees with the Southern District and adopts the more recent position that 11 U.S.C. Section 546(a) and 549(d) are waivable statutes of limitations. Therefore, the defense must be raised in accordance with Rule 8(c), Fed.R.Civ.P., which, in part, states:

Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, ... statute of limitations, waiver and any other matter constituting an avoidance or affirmative defense.

It is well established that a statute of limitations defense is an affirmative defense, and failure to assert an affirmative defense, in compliance with Rule 8(c) Fed. R.Civ.P., constitutes a waiver. *Am. Nat'l Bank v. FDIC,* 710 F.2d 1528 (11th Cir.1983); *see* Rule 8(c), Fed.R.Civ.P. Since Appellants did not plead the affirmative defense of statute of limitations, they waived the defense and cannot now raise it on appeal. Therefore, it is unnecessary to determine when the statute of limitations began to run. Accordingly, it is

**ORDERED** that the Bankruptcy Court's Order be **AFFIRMED,** and the Clerk of the Court shall dismiss this Appeal.