[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 96-3790
Non-Argument Calendar

D. C. Docket No. 96-765-CIV-T-17E
Bkcy. No. 91-12432-8P7 (Adv. 95-505)

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/21/98
THOMAS  K. KAHN
CLERK

IN RE:     WILLIAM D. PUGH and
           ELIZABETH PUGH,

                                                    Debtors.

WILLIAM D. PUGH and
ELIZABETH PUGH,

                                                    Plaintiffs-Appellants,

                              versus

V. JOHN BROOK, JR., Trustee,

                                                    Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Florida

(October 21, 1998)

Before TJOFLAT, DUBINA and BARKETT, Circuit Judges.

TJOFLAT, Circuit Judge:

This appeal presents the following question: Do the limitations periods prescribed in 11 U.S.C. §§ 546(a) and 549(d) operate to divest a bankruptcy court of subject matter jurisdiction once they have elapsed, or do these periods constitute statutes of limitations that can be waived? We adopt the latter characterization as the law of this circuit, and therefore affirm.

I.

This appeal involves an adversary proceeding brought in bankruptcy court by the appellee, bankruptcy trustee V. John Brook, Jr., against the appellants, debtors William D. Pugh and Elizabeth Pugh. The bankruptcy from which this proceeding arose began on September 27, 1991. On that date, the debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in order to prevent an impending foreclosure sale of their chicken ranch in Plant City, Florida. The debtors also filed schedules of assets and liabilities that did not make adequate disclosure with respect to two of their pre-petition assets. First, the debtors did not disclose that, shortly before filing for bankruptcy, Mr. Pugh received $75,000 (net of fees and costs) as a settlement for injuries sustained in an auto accident. The debtors used the proceeds from this settlement to purchase two annuity contracts on September 13, 1991. In their schedules of assets, the debtors claimed these annuities as exempt assets with a value of $501 per month. Second, the debtors did not disclose an unliquidated breach of contract claim that they had against Zephyr Egg Co.

On November 4, 1991, Sun Bank of Pasco County, Florida, sought relief from the automatic stay in order to complete its foreclosure on the debtors' ranch. The bankruptcy court

2

entered an order on January 15, 1992, that denied Sun Bank's motion for relief and approved a settlement under which the debtors would pay Sun Bank $50,000 in satisfaction of the bank's pre-petition judgment. Without obtaining bankruptcy court authorization under 11 U.S.C. § 364, the debtors then borrowed $50,000 from their annuities in order to pay Sun Bank.

On February 5, 1992, the debtors filed a notice of voluntary conversion to Chapter 7. One week later, the bankruptcy court entered an order converting the case and appointing Mr. Brook as interim trustee. Mr. Brook then became the permanent trustee at the 11 U.S.C. § 341 meeting of creditors on April 16, 1992.

On April 3, 1992, the debtors filed amended schedules of assets and liabilities that listed the Zephyr Egg claim on Schedule C as exempt property of undetermined value. After negotiating with the debtors' counsel, the trustee filed a notice of intention to sell property of the estate. This notice, which was filed on September 10, 1992, stated that the estate would receive 70% of the proceeds (after expenses) of any settlement of the debtors' claim against Zephyr Egg, and that the debtors would receive the remaining 30%. In January 1993, the debtors settled their suit against Zephyr Egg without bankruptcy court approval and received $63,310.80 (net of costs and fees). On March 19, 1993, the trustee filed a motion seeking bankruptcy court approval of the settlement of the Zephyr Egg claim under the 70%–30% split outlined in the September 1992 notice; the court denied the motion on grounds of improper service on May 17, 1993.

The debtors used $50,000 from the Zephyr Egg settlement to replace the amount they had taken from their annuities to pay Sun Bank, and tendered $13,400 to the trustee under the mistaken belief that this amount would be sufficient to satisfy the remaining claims against the bankruptcy estate. On August 4, 1993, the bankruptcy court granted the trustee's amended

motion for an order to show cause why the debtors should not be held in contempt for failing to turn over 70% of the Zephyr Egg settlement proceeds to the trustee. The court subsequently discharged its August order to show cause on March 24, 1994. In its March discharge order, the bankruptcy court ruled that the debtors had a conclusive right to the Zephyr Egg settlement proceeds because no objection was interposed within 30 days after the debtors filed their amended Schedule C in April 1992.

The trustee later discovered, however, that the debtors had never served the parties in interest with the April 1992 version of Schedule C. He therefore filed a motion to strike the amended Schedule C, which the bankruptcy court granted on July 26, 1994. The debtors filed a second amended Schedule C on August 30, 1994, in which they claimed that the full amount of the Zephyr Egg claim was exempt. After several creditors objected to this claimed exemption, the bankruptcy court entered an order on January 17, 1995, that disallowed the exemption and declared that the proceeds of the Zephyr claim were the property of the bankruptcy estate.

On July 21, 1995, the trustee initiated the adversary proceeding at issue. The trustee's complaint sought: an accounting of the proceeds of the Zephyr Egg settlement (Count I); the turnover of those proceeds pursuant to 11 U.S.C. § 542(b) (Count II); and the imposition of an equitable lien on the debtors' annuities (Count III). On September 18, 1995, the debtors filed their answer and affirmative defenses; this filing did not raise a statute of limitations defense. The bankruptcy court entered a final judgment in favor of the trustee as to Count II, and in favor of the debtors as to Counts I and III, on March 6, 1996. This judgment required the debtors to turn over $44,317.56 to the trustee, and provided that the trustee could impose a constructive trust on the annuities if the debtors failed to pay. See Brook v. Pugh (In re Pugh), 195 B.R. 787

4

(Bankr. M.D. Fla. 1996). On March 18, 1996, the debtors appealed this judgment to the district court pursuant to 28 U.S.C. § 158.

The debtors raised two issues before the district court. First, they claimed that the bankruptcy court did not have subject matter jurisdiction to consider the trustee's adversary proceeding. The district court, noting that the debtors presented no argument on this point, found that their contention was without merit. See Pugh v. Brook (In re Pugh), 202 B.R. 792, 795 (M.D. Fla. 1996).

Second, the debtors claimed that the trustee was barred by 11 U.S.C. § 546 from commencing or maintaining the adversary proceeding. In response, the trustee argued that because the debtors failed to raise the statute of limitations found in either 11 U.S.C. §§ 546(a) or 549(d) as an affirmative defense in their September 1995 filing, they had waived that defense. The district court, agreeing with the trustee, concluded that these two sections of the bankruptcy code constituted waivable statutes of limitations rather than non-waivable jurisdictional bars. Because the debtors had waived their statute of limitations defense by failing to include it in their answer, as required by Fed. R. Civ. P. 8(c), the district court held that they could not raise it on appeal. Accordingly, the district court entered an order affirming the judgment of the bankruptcy court on November 18, 1996. See Pugh, 202 B.R. at 795-96. This appeal followed.

II.

This court has jurisdiction over all final orders of a district court exercising appellate jurisdiction over bankruptcy court orders. See 28 U.S.C. § 158(d) (1994). In exercising such

5

jurisdiction, we review conclusions of law made by the district and bankruptcy courts de novo.

See Hardy v. United States (In re Hardy), 97 F.3d 1384, 1388 (11th Cir. 1996).

A.

The sole issue of law raised by the debtors on appeal is whether the limitations periods in

11 U.S.C. §§ 546(a) and 549(d) (hereinafter "code provisions") constitute bars to subject matter

jurisdiction rather than waivable statutes of limitations.  At the time that the debtors commenced

their bankruptcy case,[1] 11 U.S.C. § 546(a) (1988) provided:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may
> not be commenced after the earlier of – (1) two years after the appointment of a
> trustee . . . or (2) the time the case is closed or dismissed.

11 U.S.C. § 549(d) (1994) provides:

> An action or proceeding under [section 549] may not be commenced after the
> earlier of – (1) two years after the date of the transfer sought to be avoided; or (2)
> the time the case is closed or dismissed.

Aside from the fact that they affect different sections of Title 11, the only difference between

these two code provisions is the point at which the two-year limitations period begins to run.

See McFarland v. Leyh (In the Matter of Tex. Gen. Petroleum Corp.), 52 F.3d 1330, 1338 n.10

(5th Cir. 1995).  The observations that follow, therefore, apply to both code provisions.

In assessing the debtors' argument that these code provisions raised a non-waivable

jurisdictional bar to the trustee's adversary proceeding, we must first consider whether either

section 546(a) or section 549(d) can properly be applied here.  Because the trustee's complaint

---

[1] Section 546(a)(1) was amended in 1994.  This amendment, however, does not apply to cases commenced under Title 11 before October 22, 1994.  See Pub. L. No. 103-394, § 702(b)(1), 108 Stat. 4106, 4150 (1994).

framed the adversary proceeding as a turnover action under 11 U.S.C. § 542, a section to which

neither code provision refers, it is not immediately apparent how these code provisions could

have any application to the proceeding. The debtors contend, however, that the trustee's

proceeding actually should be characterized as an action under 11 U.S.C. § 549 to avoid a post-

petition transfer, as well as an action under 11 U.S.C. § 544 to impose a state-law constructive

trust on the annuity proceeds. Even assuming <u>arguendo</u> that the trustee's action may be so

characterized[2] and that the two-year limitations period in each code provision had elapsed before

---

[2] We express no opinion here as to whether a court may look to the underlying nature of an adversary proceeding to determine whether section 546(a) or section 549(d) applies. <u>Cf</u>. <u>DiCello v. United States</u> (<u>In the Matter of the Ry. Reorganization Estate, Inc.</u>), 133 B.R. 578, 582 (Bankr. D. Del. 1991) (holding that the section 546(a) limitations period is "strictly construed as applicable only to the actions named," and that "[c]ourts will not look to the underlying nature of the proceeding" to determine whether this code provision applies).

the trustee brought his proceeding,[3] we cannot agree that the effect of these code provisions was to divest the bankruptcy court of subject matter jurisdiction.

Although the effect of these provisions is an issue of first impression before this court, it has been considered in other circuits and in the lower courts of this circuit. The bipolar split of authority that has developed among these courts can be conceptualized in different ways. For example, we could view this split as a dispute over whether these code provisions constitute statutes of repose or statutes of limitations. See Frascatore v. Secretary of HUD (In re Frascatore), 98 B.R. 710, 718-19 (Bankr. E.D. Pa. 1989); cf. Bradway v. American Nat'l Red

---

[3] Under the pre-1994 version of section 546(a), a split of authority exists on the issue of whether the phrase "appointment of a trustee" also refers to a Chapter 11 debtor in possession and, if so, whether a new two-year limitations period begins to run in the event that a trustee is later appointed. See Gleischman Sumner Co. v. King, Weiser, Edelman & Bazar, 69 F.3d 799 (7th Cir. 1995) (phrase does not apply to debtor-in-possession); Maurice Sporting Goods, Inc. v. Maxway Corp. (In re Maxway Corp.), 27 F.3d 980 (4th Cir. 1994) (same); Tidwell v. Bank South (In re Denver/Robins Venture Partners, Ltd.), 166 B.R. 769 (Bankr. M.D. Ga. 1994) (same). But see CompuAdd Corp. v. Texas Instruments Inc. (In re CompuAdd Corp.), 137 F.3d 880 (5th Cir. 1998) (phrase applies to debtor-in-possession); U.S. Brass & Copper Co. v. Caplan (In re Century Brass Products, Inc.), 22 F.3d 37 (2d Cir. 1994) (same); Construction Management Servs., Inc. v. Manufacturers Hanover Trust Co. (In re Coastal Group, Inc.), 13 F.3d 81 (3d Cir. 1994) (same); Upgrade Corp. v. Government Tech. Servs., Inc. (In re Softwaire Centre Int'l, Inc.), 994 F.2d 682 (9th Cir. 1993) (same); Zilkha Energy Co. v. Leighton, 920 F.2d 1520 (10th Cir. 1990) (same); Feltman v. General Motors Acceptance Corp. (In re Tusa Fla., Inc.), 186 B.R. 542 (Bankr. S.D. Fla. 1995) (same). Cf. M.K. Moore & Sons, Inc. v. Slutsky (In re Wm. Cargile Contractor, Inc.), 145 F.3d 1335 (6th Cir. 1998) (unpublished case holding that regardless of whether phrase applies to debtor-in-possession, a new limitations period begins upon the appointment of a trustee). We need not take a position on this issue here. In this case, the debtors became debtors-in-possession when they filed their Chapter 11 petition on September 27, 1991; Mr. Brook was appointed permanent trustee on April 16, 1992. Both of these dates are over two years prior to July 21, 1995, the date on which the trustee brought this adversary proceeding.

As to section 549(d), the debtors argue that the date of the transfer sought to be avoided was the date, sometime in February or March of 1993, that they transferred $50,000 in Zephyr Egg settlement proceeds to their annuities. Assuming for purposes of this discussion that the debtors are correct, the two-year limitations period of section 549(d) had likewise elapsed before the trustee brought this proceeding on July 21, 1995.

Cross, 992 F.2d 298, 301 (11th Cir. 1993) (explaining that, while a statute of limitations is contingent, a statute of repose is absolute in that it "destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists" (quoting Wright v. Robinson, 426 S.E.2d 870, 871-72 (Ga. 1993))). Alternatively, we could consider whether the provisions are "substantive" (also called "jurisdictional") or "procedural" statutes of limitations. See Bartlik v. United States Dep't of Labor, 62 F.3d 163, 166 n.1 (6th Cir. 1995) (en banc) (citing Martin v. First Nat'l Bank of Louisville (In re Butcher), 829 F.2d 596, 600 (6th Cir. 1987); Rust v. Quality Car Corral, Inc., 614 F.2d 1118, 1119 (6th Cir. 1980)); cf. Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 425-27 & n.2, 85 S. Ct. 1050, 1053-54 & n.2, 13 L. Ed. 2d 941 (1965), rev'g 332 F.2d 529 (6th Cir. 1964) (noting that "the 'substantive' - 'procedural' distinction would seem to be of little help in deciding questions of extending the limitation period"). It is more conducive to reasoned analysis, however, to conceptualize this split as a disagreement over whether these code provisions constitute grants of subject matter jurisdiction that leave a court without any authority to hear certain proceedings – i.e., that extinguish the right of action itself by divesting a court of its subject matter jurisdiction over certain proceedings – after the limitations period has elapsed, or whether they are true statutes of limitations that restrict the power of a court to grant certain remedies in a proceeding over which it has subject matter jurisdiction. See Beach v. Ocwen Fed. Bank, 523 U.S. —, —, 118 S. Ct. 1408, 1412, 140 L. Ed. 2d 166 (1998); Midstate Horticultural Co. v. Pennsylvania R.R. Co., 320 U.S. 356, 358-59, 64 S. Ct. 128, 129-30, 88 L. Ed. 96 (1943); William L. Norton, Jr., Norton Bankruptcy Law and Practice § 4:1 (2d ed. 1991). Because subject matter jurisdiction cannot be conferred by waiver, see Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456

9

U.S. 694, 702, 102 S. Ct. 2099, 2104, 72 L. Ed. 2d 492 (1982), the debtors would prevail under the former interpretation; the latter interpretation, on the other hand, would support the trustee's argument that the debtors waived their statute of limitations defense by failing to assert it in their September 1995 filing. See Fed. R. Civ. P. 8(c); American Nat'l Bank of Jacksonville v. FDIC, 710 F.2d 1528, 1537 (11th Cir. 1983).

## B.

### 1.

The conclusion that sections 546(a) and 549(d) are true statutes of limitations that can be waived finds some support in the plain language of the provisions themselves. See Beach, 523 U.S. at —, 118 S. Ct. at 1412 (examining a statute's plain language to determine whether the statute was a grant of subject matter jurisdiction or a statute of limitations). The Supreme Court has stated that "[t]he terms of a typical statute of limitation provide that a cause of action may or must be brought within a certain period of time." Id. To corroborate this observation, the Court cited the following statement with approval: "most statutes of limitation provide either that 'all actions . . . shall be brought within' or 'no action . . . shall be brought more than' so many years after 'the cause thereof accrued.'" Id. (quoting Note, Developments in the Law: Statutes of Limitations, 63 Harv. L. Rev. 1177, 1179 (1950)). Sections 546(a) and 549(d), which provide that "[a]n action or proceeding . . . may not be commenced after" a certain time, are linguistically similar to the typical statutes of limitations noted by the Court. Rather than relying wholly on this semantic analogy, however, we turn to the decisions of other courts, the legislative history, and the statutory scheme for additional guidance in choosing between the two possible

interpretations of these code provisions.  See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392-99, 102 S. Ct. 1127, 1132-35, 71 L. Ed. 2d 234 (1982) (examining prior cases, legislative history, and the statutory scheme to determine whether a provision is a statute of limitations or a grant of subject matter jurisdiction); CompuAdd Corp. v. Texas Instruments Inc. (In re CompuAdd Corp.), 137 F.3d 880, 882 (5th Cir. 1998) (cautioning against the use of a strict plain meaning approach when construing provisions of the Bankruptcy Code).

2.

The decision most often cited in support of the subject matter jurisdiction view is Martin v. First National Bank of Louisville (In re Butcher), 829 F.2d 596 (6th Cir. 1987), cert. denied, 484 U.S. 1078 (1988).  In Butcher, the bankruptcy trustee, who was appointed on August 17, 1983, commenced a proceeding on Monday, August 19, 1985, to avoid certain preferential transfers under 11 U.S.C. § 547(b).  The defendant in that proceeding filed a motion to dismiss, arguing that the action was barred by section 546(a).  The trustee responded that the action was timely commenced because Bankruptcy Rule 9006(a) (an adaptation of Fed. R. Civ. P. 6(a)) required the exclusion of August 17 and 18 (Saturday and Sunday) in computing the two-year limitations period under section 546(a).  The bankruptcy court, noting the argument that "the time limitation embodied in § 546(a) is more in the nature of a procedural bar to the exercise of a remedy than a condition of time forming a substantive part of the statutory rights in question," found that Rule 9006(a) did apply in computing the § 546(a) limitations period.  As a result, the court concluded that the trustee's action was timely commenced.  See Martin v. First National

11

Bank of Louisville (In re Butcher), 57 B.R. 101, 103-04 & n.2 (Bankr. E.D. Tenn. 1985), rev'd, 78 B.R. 520 (E.D. Tenn. 1986), aff'd, 829 F.2d 596 (6th Cir. 1987).

The district court reversed, and the Sixth Circuit affirmed the district court's disposition. Both courts reasoned that the Sixth Circuit's earlier decision in Rust v. Quality Car Corral, Inc., 614 F.2d 1118 (6th Cir. 1980) (refusing to apply Fed. R. Civ. P. 6(a) when computing a limitations period in the Truth in Lending Act), required the conclusion that "[i]f a complaint seeking to avoid a preferential or fraudulent transfer is not filed in accordance with section 546(a), a bankruptcy court has no jurisdiction to hear the action." Butcher, 829 F.2d at 600. Having thus characterized section 546(a) as a "jurisdictional" (or "substantive") statute of limitations, the court went on to cite 28 U.S.C. § 2075[4] for the proposition that Bankruptcy Rule 9006(a) cannot extend or limit the jurisdiction of the bankruptcy courts. The Butcher court held, therefore, that "[j]urisdiction must arise from section 546(a) without reference to Bankruptcy Rule 9006(a)." Butcher, 829 F.2d at 601.

We find that Butcher does not provide persuasive support for the subject matter jurisdiction view for two major reasons.[5] First, the Sixth Circuit's decision in Rust offered no meaningful analysis to support its holding that a limitations period in the Truth in Lending Act,

---

[4] This section states, in pertinent part, that the bankruptcy rules "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075 (1994) (emphasis added).

[5] Butcher has also been criticized on grounds other than those we develop here. For example, the court in Amdura Corp. v. Faegre & Benson (In re Amdura Corp.), 142 B.R. 433 (Bankr. D. Colo. 1992), held that Bankruptcy Rule 9006(a) applies to section 546(a) regardless of whether that section is a jurisdictional grant. Additional criticisms are explored in Grella v. Zimmerman (In re Art & Co., Inc.), 179 B.R. 757, 762 (Bankr. D. Mass. 1995).

15 U.S.C. § 1640(e), could not be computed by reference to Fed. R. Civ. P. 6(a).[6] The court

simply made the following observation regarding the relationship between federal statutes and

Rule 6(a):

> The Truth in Lending Act creates a cause of action and confers jurisdiction on
> federal courts to hear cases arising under the statute. That jurisdiction is defined
> and circumscribed by the act itself, in a temporal as well as a <u>substantive</u> sense. If
> a complaint is not filed within the time period prescribed by 15 U.S.C. § 1640(e),
> a federal court has no jurisdiction to entertain it.

<u>Rust</u>, 614 F.2d at 1119 (emphasis added). Not only is this observation devoid of analysis, but it

also rests upon an untenable assumption – namely, that a limitations period contained in the

same statute that creates the cause of action at issue must automatically be characterized as a

"substantive" curtailment of the subject matter jurisdiction granted to the federal courts by that

statute.[7] The Supreme Court rightly has rejected this categorical approach. <u>See</u> <u>American Pipe</u>

<u>& Constr. Co. v. Utah</u>, 414 U.S. 538, 556-60 & n.26, 94 S. Ct. 756, 767-69 & n.26, 38 L. Ed. 2d

713 (1974); <u>Burnett v. New York Cent. R.R. Co.</u>, 380 U.S. 424, 425-27 & n.2, 85 S. Ct. 1050,

1053-54 & n.2;[8] <u>see also</u> <u>Osmundsen v. Todd Pac. Shipyard</u>, 755 F.2d 730, 733 (9th Cir. 1985);

---

[6] In pertinent part, Fed. R. Civ. P. 6(a) provides:
In computing any period of time prescribed or allowed by these rules . . . or by any
applicable statute, the day of the act, event, or default from which the designated
period of time begins to run shall not be included. The last day of the period so
computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday . . .
.

[7] This erroneous assumption also appears explicitly in <u>Butcher</u>. In that case, the Sixth
Circuit characterized a portion of the defendant's argument in the following way: "[t]he cause of
action in the present case, like the cause of action in <u>Rust</u>, is created by statute, and a statute of
limitations is a restriction on the substantive right created by Congress." <u>Butcher</u>, 829 F.2d at
600.

[8] While these two cases rejected this approach in the context of deciding whether a
limitations period could be equitably tolled, the same analysis would apply with respect to the
trustee's claim of waiver in this case. <u>See</u> <u>Zipes</u>, 455 U.S. at 393, 102 S. Ct. at 1132 ("We hold

13

Iron-Oak Supply Corp. v. Nibco, Inc. (In re Iron-Oak Supply Corp.), 162 B.R. 301, 307 (Bankr. E.D. Cal. 1993) (noting that modern Supreme Court decisions have narrowly confined earlier decisions that viewed statutory limitations periods as statutes of repose, and stating that "[a] limitation that extinguishes the right of action and that forbids equitable tolling must be unequivocal and unambiguous."). Because Butcher relies solely on Rust, the Butcher court's conclusion that section 546(a) is a substantive curtailment of subject matter jurisdiction is likewise untenable.

An additional reason for rejecting the Butcher court's conclusion is that Rust cannot provide any support for that conclusion in our circuit.[9] In Lawson v. Conyers Chrysler, Plymouth, & Dodge Trucks, Inc., 600 F.2d 465 (5th Cir. 1979),[10] we concluded that the same Truth in Lending Act limitations period that the Rust court addressed was a statute of limitations that should be computed under the standards of Fed. R. Civ. P. 6(a). See Judson v. International

---

that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); Smith v. Mark Twain Nat'l Bank, 805 F.2d 278, 293-94 (8th Cir. 1986) (making the following observation before holding that equitable estoppel applies to section 549(d): "[The doctrine of equitable estoppel], however, is not applicable to the time limits of every federal statute; only where the time limits are in the nature of a true statute of limitations will it apply. In that case, the statute is a mere affirmative defense, and thus, is subject to equitable considerations such as estoppel and waiver. . . . On the other hand, where the time limits are jurisdictional, . . . the time limits are strictly construed, and equitable considerations are inapplicable." (citations omitted)).

[9] We also note that the holdings of Rust and Butcher have been overruled by the Sixth Circuit itself. In Bartlik v. United States Department of Labor, 62 F.3d 163, 165-66 & n.1 (6th Cir. 1995) (en banc), the Sixth Circuit held that Fed. R. Civ. P. 6(a) could be used to calculate a limitations period without enlarging the jurisdiction of the federal courts.

[10] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

14

Terminal Operating Co. (In re Oro Import Co.), 69 B.R. 6, 8 (S.D. Fla. 1986), rev'g 52 B.R. 357 (Bankr. S.D. Fla. 1985) (noting the incompatibility of Rust and Lawson, and citing Lawson in support of its conclusion that Bankruptcy Rule 9006(a) should be used in computing the section 546(a) limitations period).

Although Butcher itself is unpersuasive, it is not the only authority that can be cited for the proposition that sections 546(a) and 549(d) curtail the subject matter jurisdiction of the federal courts. Upon careful examination, however, this additional authority proves to be no more convincing. Like the Butcher court, the few other courts that have adopted this jurisdictional view offer little analysis to support their position. See, e.g., DiCello v. United States (In the Matter of the Ry. Reorganization Estate, Inc.), 133 B.R. 578, 581 (Bankr. D. Del. 1991) (citing Butcher); Frascatore v. Secretary of HUD (In re Frascatore), 98 B.R. 710, 718-19 (Bankr. E.D. Pa. 1989). Moreover, the jurisdictional view adopted by these courts is clearly the minority position. The weight of recent authority supports the conclusion that these provisions are true statutes of limitations that can be waived. See McFarland v. Leyh (In the Matter of Tex. Gen. Petroleum Corp.), 52 F.3d 1330, 1337-38 (5th Cir. 1995); Iron-Oak Supply Corp. v. Nibco, Inc. (In re Iron-Oak Supply Corp.), 162 B.R. 301, 307 (Bankr. E.D. Cal. 1993) (rejecting the argument that section 546(a)(1) is a statute of repose); Amazing Enters. v. Jobin (In re M&L Bus. Machines, Inc.), 153 B.R. 308, 311 (D. Colo. 1993) (noting that "the limitations period established in § 546 is not jurisdictional, can be waived, and is subject to the doctrines of equitable estoppel and equitable tolling" (citations omitted)); Brandt v. Gelardi (In re Shape, Inc.), 138 B.R. 334, 337 (Bankr. D. Me. 1992) (holding that section 546(a) is a true statute of limitations that can be extended by agreement of the parties); Lawrence P. King et al., Collier on

15

Bankruptcy ¶ 546.02[4] (15th rev. ed. 1998) (noting that "if not timely asserted, a defendant may waive its statute of limitations defense under section 546(a)"); cf. United States Lines (S.A.), Inc. v. United States (In re McLean Indus., Inc.), 30 F.3d 385, 387 (2d Cir. 1994) (considering whether a party had waived its right to rely on section 546(a) by failing to specifically press its statute of limitations argument throughout the litigation, and finding that a waiver had not occurred).

The conclusion that these code provisions are waivable statutes of limitations receives persuasive support from a second line of authority as well. As other courts have recognized, a true statute of limitations is subject not only to waiver but also to doctrines such as estoppel and equitable tolling; in contrast, a limitations period that curtails the subject matter jurisdiction of the federal courts is subject to none of these constraints. See supra note 8. Therefore, the determination that a given statute of limitations can be equitably tolled is fundamentally inconsistent with the view that the statute divests a court of subject matter jurisdiction over certain actions once the limitations period has elapsed. See Iron-Oak Supply Corp., 162 B.R. at 307. Applying these principles to this case, we find that there is a strong consensus among courts that sections 546(a) and 549(d) can be equitably tolled. See, e.g., Jobin v. Boryla (In re M&L Bus. Machine Co.), 75 F.3d 586, 591 (10th Cir. 1996) (section 546(a) is subject to equitable tolling);[11] Olsen v. Zerbetz (In re Olsen), 36 F.3d 71, 73 (9th Cir. 1994) (citing cases to

---

[11] Apparently, there is some conflict within the Tenth Circuit regarding the effect of section 546(a). The Jobin court's holding that section 546(a) can be equitably tolled indicates, as we discuss above, that the court viewed this section as a true statute of limitations. The court in Starzynski v. Sequoia Forest Industries, 72 F.3d 816, 822 (10th Cir. 1995), however, expressed some doubt about whether a Chapter 11 liquidating plan could extend the limitations period of section 546(a). The court then cited some cases (which themselves merely cited Butcher and Frascatore) for the proposition that section 546(a) curtails the subject matter jurisdiction of the

16

support the statement that "every court to consider if equitable tolling applies to § 549(d) has concluded that it does"); Ernst & Young v. Matsumoto (In re United Ins. Management, Inc.), 14 F.3d 1380, 1385 (9th Cir. 1994) (citing cases to support the statement that "[e]very court that has considered the issue has held that equitable tolling applies to § 546(a)(1)"); Smith v. Mark Twain Nat'l Bank, 805 F.2d 278, 294 (8th Cir. 1986) (in holding that equitable estoppel applies to section 549(d), the court stated that "[t]he two-year limitations period sets a time frame in which an action brought under section 549 may be commenced; it has nothing to do with the jurisdiction of the United States federal courts."); cf. Bailey v. Glover, 88 U.S. (21 Wall.) 342, 347-50, 22 L. Ed. 636 (1874) (holding that the two-year limitations period on fraudulent transfer actions in the Bankruptcy Act of 1867 was subject to equitable tolling); Jones v. TransOhio Sav. Assoc., 747 F.2d 1037, 1041-42 (6th Cir. 1984) (confining Rust to its facts, and holding that the Truth in Lending Act limitations period at issue in Rust could be equitably tolled). In light of this consensus, the weight of recent authority that permits waiver, and the lack of convincing analysis to support the subject matter jurisdiction view, we find that the decisions of other courts solidly support the conclusion that sections 546(a) and 549(d) are true statutes of limitations that can be waived.

3.

The Supreme Court repeatedly has confirmed the important role that legislative intent plays in determining whether a limitations period can be waived or tolled. See Beach v. Ocwen

---

federal courts, as well as some cases for the proposition that this section is a true statute of limitations. Given the equivocal nature of the Starzynski court's observations, however, we cite Jobin here.

Fed. Bank, 523 U.S. —, —, 118 S. Ct. 1408, 1412-13, 140 L. Ed. 2d 166 (1998); American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 557-58, 94 S. Ct. 756, 768, 38 L. Ed. 2d 713 (1974) (noting that the proper test is whether "tolling the limitation in a given context is consonant with the legislative scheme"); Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 426-27, 85 S. Ct. 1050, 1053-54, 13 L. Ed. 2d 941 (1965) (tolling); Midstate Horticultural Co. v. Pennsylvania R.R. Co., 320 U.S. 356, 360, 64 S. Ct. 128, 130, 88 L. Ed. 96 (1943) (waiver). In this case, the legislative history and the statutory scheme confirm the conclusion that sections 546(a) and 549(d) are waivable statutes of limitations.

Although the legislative history of the Bankruptcy Reform Act of 1978 does not contain any references to section 549(d), the Senate Report makes the following observation regarding section 546(a): "Subsection (c) [enacted as (a)] adds a statute of limitations to the use by the trustee of the avoiding powers." S. Rep. No. 95-989, at 87 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5873. This observation offers some evidence to support the view that Congress' intent in enacting section 546(a) was to create a limitations period that, like any normal "statute of limitations," could be waived. This view is bolstered by the legislative history of the 1994 amendment to section 546(a), which altered the length and applicability of the limitations period in certain respects. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394, 102 S. Ct. 1127, 1133, 71 L. Ed. 2d 234 (1982) (noting that subsequent legislative history is not dispositive, but citing such history as additional support for the conclusion that Congress intended the period at issue to operate as a statute of limitations instead of a jurisdictional requirement). The House Report noted that the amendment

> is not intended to affect the validity of any tolling agreement or to have any bearing on the equitable tolling doctrine where there has been fraud determined to

18

> have occurred. The time limits are not intended to be jurisdictional and can be extended by stipulation between the necessary parties to the action or proceeding.

H.R. Rep. No. 103-835, at 49-50 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3358. The support that these comments lend to the conclusion that the pre-amendment version of section 546(a) is a waivable statute of limitations is considerable, particularly given the House Report's further statement that the amendment merely "clarifies section 546(a)(1) of the Bankruptcy Code." Id. at 49, 1994 U.S.C.C.A.N. at 3358.

4.

As to the statutory scheme, other courts have noted that if the statutory provision that grants courts jurisdiction over certain actions is separate from the provision that imposes a limitations period on those actions, this arrangement corroborates the conclusion that the limitations period is a true statute of limitations. See Zipes, 455 U.S. at 393-94, 102 S. Ct. at 1132-33; McFarland v. Leyh (In the Matter of Tex. Gen. Petroleum Corp.), 52 F.3d 1330, 1338 (5th Cir. 1995) (noting, in support of its conclusion that section 546(a) is waivable, that the bankruptcy courts acquire jurisdiction from 28 U.S.C. § 157). This corroboration is strongest in cases where the limitations period "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the . . . courts." Zipes, 455 U.S. at 394, 102 S. Ct. at 1133. In this case, the debtors do not contest the premise that the bankruptcy court had subject matter jurisdiction over the trustee's proceeding under 28 U.S.C. § 157. Obviously, this provision is separate from 11 U.S.C. §§ 546(a) and 549(d). In addition, neither section 546(a) nor section 549(d) contains any reference to the jurisdiction of any court. Cf. id. at 393-94 & nn.9-10, 102 S. Ct. at 1132-33 &

19

nn.9-10. Therefore, the statutory scheme also confirms the conclusion that sections 546(a) and 549(d) are waivable statutes of limitations.

## III.

In light of the plain language of these code provisions, the decisions of other courts, the legislative history of the provisions, and the statutory scheme, we conclude that the limitations periods prescribed in 11 U.S.C. §§ 546(a) and 549(d) are statutes of limitations that can be waived. The decision of the district court is therefore

AFFIRMED.