[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 2, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13429

_____

D. C. Docket No. 06-02575-CV-TCB-1
BKCY No. 02-93973-CRM

TRUSTED NET MEDIA HOLDINGS, LLC,

Debtor.

_____

TRUSTED NET MEDIA HOLDINGS, LLC,

Plaintiff-Appellant,

versus

THE MORRISON AGENCY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(December 2, 2008)**

Before EDMONDSON, Chief Judge, and TJOFLAT, ANDERSON, BIRCH,
DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON and
PRYOR, Circuit Judges.

HULL, Circuit Judge:

This appeal presents the question of whether the requirements in 11 U.S.C. § 303(b) for commencing an involuntary bankruptcy petition are elements of subject matter jurisdiction. We granted rehearing en banc to reexamine the issue. After review and en banc briefing, we conclude that § 303(b)'s requirements are not subject matter jurisdictional in nature and therefore can be waived.

## I. BACKGROUND

### A. Trusted Net's 2002 Bankruptcy

In this bankruptcy case, appellant Trusted Net Media Holdings, LLC ("Trusted Net") is the debtor and appellee The Morrison Agency, Inc. ("Morrison") is one of Trusted Net's creditors. On April 20, 2002, Morrison filed an involuntary bankruptcy petition against Trusted Net, requesting liquidation of Trusted Net's assets pursuant to Chapter 7 of the Bankruptcy Code. Morrison's petition listed Morrison as the only petitioning creditor of Trusted Net, and described Morrison's claim against Trusted Net as "Trade Debt/Judgment" in an amount "[n]ot less than [$]534,000.00."

Morrison's involuntary petition stated that Morrison was "eligible to file this petition pursuant to 11 U.S.C. § 303(b)." As detailed below, § 303(b) permits the commencement of an involuntary bankruptcy case against a debtor (1) by three or

2

more creditors holding non-contingent, undisputed claims against that debtor, or (2) by a single holder of a non-contingent, undisputed claim if there are fewer than twelve such creditors of the debtor. 11 U.S.C. § 303(b). At the time Morrison filed its involuntary petition against Trusted Net, § 303(b) also required that the petitioning creditors' non-contingent, undisputed claims against the debtor aggregate at least $11,625. See 11 U.S.C. § 303(b) (2001).[1]

Trusted Net, whose assets were at that time under the control of a state-court-appointed receiver, filed no response to the involuntary petition. Thus, the bankruptcy court entered an Order for Relief on May 15, 2002 and appointed a Chapter 7 trustee. The trustee marshaled Trusted Net's assets in preparation for liquidation. The bankruptcy case proceeded through administration for two years.

**B.     Trusted Net's 2006 Motion to Dismiss**

In April 2004, David W. Huffman, an officer and controlling member of Trusted Net, filed a motion to dismiss the bankruptcy case, arguing that the involuntary petition failed to satisfy § 303(b) and that failure divested the bankruptcy court of subject matter jurisdiction. Huffman was a creditor of Trusted Net as to his deferred salary. Huffman's motion to dismiss argued, among other things, that Morrison's 2002 petition violated § 303(b) in two ways:  (1)

---

[1]The threshold sum is now $13,475.  11 U.S.C. § 303(b) (2008).

Morrison's claim against Trusted Net was subject to a bona fide dispute, and therefore Morrison did not hold a non-contingent, undisputed claim against the debtor; and (2) Morrison's single-creditor petition was insufficient because Trusted Net had twelve or more creditors holding non-contingent, undisputed claims. The Chapter 7 trustee opposed the motion. After a hearing, the bankruptcy court denied Huffman's motion to dismiss on May 13, 2004. No appeal was taken from the bankruptcy court's denial of Huffman's motion to dismiss.

Another two years later, in April 2006, five of Trusted Net's creditors, including Morrison (but not including Huffman), settled with the trustee as to the amount of their respective claims. Huffman objected to the settlement of the claims of three of the creditors, including Morrison. On July 14, 2006, the bankruptcy court overruled Huffman's objections and approved the settlements.

Shortly thereafter, and more than four years after commencement of the bankruptcy case, Trusted Net (through counsel retained at Huffman's behest) filed a motion to dismiss the entire bankruptcy case for lack of subject matter jurisdiction. Similar to Huffman's motion two years earlier, Trusted Net argued that § 303(b)'s requirements must be met for the bankruptcy court to have subject matter jurisdiction, and that Morrison's petition violated § 303(b) because: (1) at the time of the involuntary petition, Morrison was not the holder of a non-

4

contingent, undisputed claim, and (2) Morrison's involuntary Chapter 7 petition was not joined by three holders of non-contingent, undisputed claims.

On October 10, 2006, the bankruptcy court denied Trusted Net's motion to dismiss. As to Trusted Net's jurisdiction argument, the bankruptcy court concluded that § 303(b) of the Bankruptcy Code was not jurisdictional and that "any argument by the Debtor that the petitioning creditor's claims are the subject of a bona fide dispute or that more than one petitioning creditor was required to put this Debtor into bankruptcy has been waived."

## C.    Trusted Net's Appeal

Trusted Net appealed the bankruptcy court's ruling to the district court. The district court affirmed, finding the bankruptcy court's order to be "thorough, well-reasoned, and correct in every respect." Trusted Net appealed to this Court.[2]

## II.  DISCUSSION

In this appeal, Trusted Net does not contest the bankruptcy court's finding that Trusted Net, through its four-year delay, waived its § 303(b) arguments that Morrison's claims are subject to bona fide dispute and that three or more

---

[2]In bankruptcy appeals, this Court independently examines the factual and legal findings of the bankruptcy court using the same standards as did the district court. Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.), 479 F.3d 791, 795 (11th Cir. 2007). We review the bankruptcy court's factual findings for clear error and its legal determinations de novo. Id.

5

petitioning creditors were required, assuming the requirements are nonjurisdictional. Rather, Trusted Net raises a single jurisdictional issue: whether § 303(b)'s requirements for involuntary bankruptcy petitions must be met to give the bankruptcy court subject matter jurisdiction. We first set forth the statutory framework for bankruptcy court jurisdiction and the commencement of involuntary bankruptcy cases. Next, we discuss the circuit split on the issue. We then explain why § 303(b)'s requirements are not subject matter jurisdictional.

**A.     Statutory Scheme**

1.     <u>Title 28</u>

Congress established the jurisdiction of the bankruptcy courts in Title 28. <u>Kontrick v. Ryan</u>, 540 U.S. 443, 453, 124 S. Ct. 906, 914 (2004). Section 1334 of Title 28 provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11 [the Bankruptcy Code]," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a)-(b).

Section 151 of Title 28 provides that the bankruptcy courts are "a unit of the district court." <u>Id.</u> § 151. Pursuant to 28 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases under title 11 [the Bankruptcy Code] and any or all proceedings arising under title 11 or arising in or related to a case under title 11

6

shall be referred to the bankruptcy judges for the district." Id. § 157(a). Section 157(b)(1) then provides that bankruptcy courts "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to [appellate] review" by the district court. Id. § 157(b)(1).[3] Thus, bankruptcy court jurisdiction exists, by reference from the district courts, "in three categories of proceedings: those that 'arise under title 11,' those that 'arise in cases under title 11,' and those 'related to cases under title 11.'" Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1344 (11th Cir. 1999) (citation omitted); see also Eastman Kodak Co. v. Atlanta Retail, Inc. (In re Atlanta Retail, Inc.), 456 F.3d 1277, 1287 (11th Cir.), cert. denied, 127 S. Ct. 836 (2006).

    2.    Title 11

In turn, Title 11, the Bankruptcy Code, contains nine chapters. Chapter 7 governs liquidation and is the substantive chapter operative in this case. Chapter 3,

---

[3]For non-core proceedings that are "otherwise related to a case under title 11," the bankruptcy court may hear the proceeding but "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

entitled "Case Administration," contains § 303(b), the procedural statute at issue.[4]

Chapter 3 has four subchapters, including Subchapter I, entitled "Commencement of a Case." See 11 U.S.C. §§ 301-308. Sections 301 and 302 of Subchapter I concern the commencement of, respectively, voluntary bankruptcy cases and joint cases filed by a debtor and his or her spouse. See id. §§ 301-302. Section 303 of Subchapter I, at issue here, addresses the commencement of involuntary cases. See id. § 303.

Although bankruptcy cases often are commenced on the debtor's own initiative, "Section 303 of the Bankruptcy Code allows creditors in some instances to hale a debtor into bankruptcy court by filing an involuntary petition." 2 William L. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law & Practice § 22:1 (3d ed. 2008). Section 303(a) provides that "[a]n involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person . . . that may be a debtor under the chapter under which such case is commenced." 11

---

[4]Chapter 1 (General Provisions), Chapter 3 (Case Administration), and Chapter 5 (Creditors, the Debtor, and the Estate) apply, with some exceptions, to all debtor-relief cases brought under the Bankruptcy Code other than those concerning municipal debts. See 11 U.S.C. § 103. Chapter 15 (Ancillary and Other Cross-Border Cases) addresses cases involving cross-border insolvency. Id. §§ 1501 et seq. The remaining five chapters govern the different forms of bankruptcy relief that are available under the Code. They are: Chapter 7 (Liquidation), Chapter 9 (Adjustment of Debts of a Municipality), Chapter 11 (Reorganization), Chapter 12 (Adjustment of Debts of a Family Farmer or Fisherman with Regular Annual Income), and Chapter 13 (Adjustment of Debts of an Individual with Regular Income). See generally Title 11, U.S. Code.

U.S.C. § 303(a). Section 303(b), the subsection with which we are primarily

concerned, sets forth the prerequisites for commencing an involuntary petition,

specifically who is qualified to do so, as follows:

> An involuntary case against a person <u>is commenced</u> by the filing with
> the bankruptcy court of a petition under chapter 7 or 11 of this title–
>
>> (1) <u>by three or more entities, each of which is either a holder of
>> a claim against such person that is not contingent as to liability
>> or the subject of a bona fide dispute</u>, or an indenture trustee
>> representing such a holder, if such claims aggregate at least
>> $11,625 more than the value of any lien on property of the
>> debtor securing such claims held by the holders of such claims;
>> [or]
>>
>> (2) <u>if there are fewer than 12 such holders</u>, excluding any
>> employee or insider of such person and any transferee of a
>> transfer that is voidable under section 544, 545, 547, 548, 549,
>> or 724(a) of this title, <u>by one or more of such holders</u> that hold
>> in the aggregate at least $11,625 of such claims . . . .

<u>Id.</u> § 303(b) (2001) (emphasis added) (footnotes omitted).[3]

Once the involuntary petition has been filed, § 303(h) provides that "[i]f the

petition is not timely controverted, the court shall order relief against the debtor in

an involuntary case under the chapter under which the petition was filed." <u>Id.</u> §

---

[3]We quote the 2001 version of § 303(b), which was in effect at the time Morrison filed its involuntary petition. Section 303(b)(1) since has been amended to add after the term "a bona fide dispute" that the claims must not be the subject of a bona fide dispute "as to liability or amount." 11 U.S.C. § 303(b)(1) (2008). Additionally, as noted above, in the current § 303(b), the minimum aggregate claim value for petitioning creditors has been raised to $13,475. <u>Id.</u>

303(h).[4]  Moreover, § 303(c) states that after the filing of an involuntary petition, other creditors with non-contingent, unsecured claims may join in the petition as if they were original petitioning creditors, as follows:

> After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

Id. § 303(c).

## B.    Circuit Split

As mentioned above, the circuit courts are split on whether the requirements of § 303(b) must be satisfied to convey subject matter jurisdiction over an involuntary case upon the bankruptcy court or whether, instead, they are merely "substantive matters which must be proved or waived for petitioning creditors to prevail in involuntary proceedings."  Rubin v. Belo Broad. Corp. (In re Rubin), 769 F.2d 611, 614 n.3 (9th Cir. 1985).  In other words, do the commencement requirements of § 303(b) in Title 11 address the jurisdictional power of the court to

---

[4]Thereafter, § 303(h) provides:
Otherwise, after trial, the court shall order relief against the debtor . . . only if–
    (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute; or
    (2) within 120 days before the date of the filing of the petition, a custodian . . . was appointed or took possession [of the debtor's property].
Id. § 303(h) (2001).

10

hear an involuntary case, or does Title 28 contain the jurisdictional grant and do §

303(b)'s requirements simply constitute elements that must be established to

sustain an involuntary proceeding?

The Ninth Circuit concluded that both the "bona fide dispute" and three-

petitioning-creditor requirements of § 303(b) can be waived and are not subject

matter jurisdictional. See id. at 614-15; Mason v. Integrity Ins. Co. (In re Mason),

709 F.2d 1313, 1318-19 (9th Cir. 1983). The Ninth Circuit reasoned that the

bankruptcy court is vested with general power under Title 28 "to exercise

jurisdiction of all cases under title 11," as well as "exclusive jurisdiction of all the

property of debtors in such cases." Rubin, 769 F.2d at 615 (quotation marks and

citation omitted). Thus, the Ninth Circuit determined that "[p]etitioning creditors

cannot prevail unless they show that their claims are not subject to bona fide

disputes, but the bankruptcy court is not without jurisdiction prior to this

determination." Id.

Most other courts to consider the issue likewise have concluded that §

303(b)'s filing requirements are not subject matter jurisdictional. See, e.g., Dunlop

Tire & Rubber Corp. v. Earl's Tire Serv., Inc. (In re Earl's Tire Serv., Inc.), 6 B.R.

1019, 1022-23 (D. Del. 1980); In re Saunders, 379 B.R. 847, 855-57 (Bankr. D.

Minn. 2007); In re MarketXT Holdings Corp., 347 B.R. 156, 161-62 (Bankr.

11

S.D.N.Y. 2006); In re Coppertone Commc'ns, Inc., 96 B.R. 233, 234-35 (Bankr. W.D. Mo. 1989); In re Alta Title Co., 55 B.R. 133, 136-37 (Bankr. D. Utah 1985). But see In re Paczesny, 283 B.R. 715, 718 (Bankr. N.D. Ill. 2002); In re Onyx Telecomms., Ltd., 60 B.R. 492, 496 (Bankr. S.D.N.Y. 1985); In re First Energy Leasing Corp., 38 B.R. 577, 580 (Bankr. E.D.N.Y. 1984); In re New Mexico Props., Inc., 18 B.R. 936, 939-40 (Bankr. D.N.M. 1982).

The leading commentators agree. See 2 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 303.04[9] (15th ed. 2007) ("The better argument . . . is that the [three-creditor] requirement [of § 303(b)] can be waived, which suggests that it is not a jurisdictional requirement."); 2 William L. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law & Practice § 22:3 (3d ed. 2008) ("Like the three-petitioner requirement, the undisputed-claim requirement [of § 303(b)] is not jurisdictional, but goes to the merits. If the point is contested, petitioners cannot prevail unless they show that their claims are not subject to bona fide dispute, but the bankruptcy court is not without jurisdiction prior to the determination.").

The Second Circuit, on the other hand, concluded that § 303(b)'s requirements are subject matter jurisdictional. Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC), 330 F.3d 111, 118 (2d Cir. 2003). It reasoned that "[w]hether an

12

alleged debtor is properly before the bankruptcy court in an involuntary case is a threshold determination that should be made at the earliest possible stage of the proceedings." Id. The bona fide dispute requirement of § 303(b), as a prerequisite to bringing an involuntary position, is such a threshold determination. Id. Thus, the Second Circuit stated, "the requirement that a petitioning creditor's claim not be subject to a bona fide dispute [is] both an element of the condition upon which a controverted order for relief may be entered and a necessary prerequisite for the bankruptcy court's jurisdiction." Id. (quotation marks and citations omitted).

Both parties here also cite our precedent in All Media Properties, Inc. v. Best (In re All Media Properties, Inc.), 646 F.2d 193 (5th Cir. Unit A May 1981), aff'g 5 B.R. 126 (Bankr. S.D. Tex. 1980), but disagree on whether All Media actually and squarely determined that § 303(b)'s requirements are subject matter jurisdictional.[5] Because this Court sitting en banc is not bound by prior decisions of a panel of this Court or its predecessor, see Powell v. Barrett, 541 F.3d 1298, 1301-02 (11th Cir. 2008) (en banc), we need not revisit All Media. Instead, we reach our own conclusions as to the proper interpretation of § 303(b).

_____

[5]In All Media, the former Fifth Circuit issued a summary affirmance "on the basis of the Memorandum Opinion of Bankruptcy Judge E.H. Patton, Jr., reported at 5 B.R. 126 (Bkrtcy., 1980)." 646 F.2d at 193. Thus, it adopted both the holding and the reasoning of the bankruptcy court's published opinion in the case.

13

## C. Analysis

To determine whether § 303(b)'s requirements are jurisdictional, we must consider "the distinction between two sometimes confused or conflated concepts: federal-court 'subject matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." Arbaugh v. Y & H Corp., 546 U.S. 500, 503, 126 S. Ct. 1235, 1238 (2006). Subject matter jurisdiction "involves the court's power to hear a case" and therefore "can never be forfeited or waived." Id. at 514, 126 S. Ct. at 1244 (citation omitted). Indeed, courts "have an independent obligation to determine whether subject-matter jurisdiction exists," even if no party raises the issue, and if the court determines that subject matter jurisdiction is lacking, it must dismiss the entire case. Id. But, "the failure of a cause of action does not automatically produce a failure of jurisdiction." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 91, 118 S. Ct. 1003, 1011 (1998). To implicate subject matter jurisdiction, a statutory requirement must speak not just to the parties' substantive rights, but also to a particular court's power. Rockwell Int'l Corp. v. United States, 549 U.S. 457, 127 S. Ct. 1397, 1406 (2007).

"Only Congress may determine a lower federal court's subject-matter jurisdiction." Kontrick v. Ryan, 540 U.S. 443, 452, 124 S. Ct. 906, 914 (2004). Therefore, the Supreme Court has instructed that courts should look to whether

14

Congress has included jurisdictional language in the statute in question, stating:

> If the Legislature <u>clearly states</u> that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

<u>Arbaugh</u>, 546 U.S. at 515-16, 126 S. Ct. at 1245 (emphasis added) (citations and footnote omitted). The Supreme Court has called this a "readily administrable bright line" test. <u>Id.</u> at 516, 126 S. Ct. at 1245.

Applying this test in <u>Arbaugh</u>, the Supreme Court concluded that Title VII's requirement that an "employer" have "fifteen or more employees" was not subject matter jurisdictional, but instead related only to the "substantive adequacy" of a Title VII plaintiff's claim and thus could not be raised for the first time post-trial. <u>Id.</u> at 503-04, 126 S. Ct. at 1238-39. In so concluding, the Supreme Court relied on these points: (1) the fifteen-employee threshold "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts"; (2) Title VII has an express jurisdictional provision, which is in a different part of the statute from the fifteen-employee requirement; (3) nothing in Title VII's statutory language suggests Congress intended courts to assure themselves <u>sua sponte</u> that the fifteen-employee requirement was met; and (4) interpreting the fifteen-employee requirement to be subject matter jurisdictional, and thus permitting non-

15

compliance with this provision to upset a prior judgment on the merits, would cause "unfairness" and "waste of judicial resources." Id. at 514-16, 126 S. Ct. at 1244-45 (brackets omitted).

Under this standard, we conclude that the language of § 303(b) does not evince a congressional intent to implicate the bankruptcy courts' subject matter jurisdiction. As in Arbaugh, the statute "does not speak in jurisdictional terms." Id. at 515, 126 S. Ct. at 1245. Section 303(b) contains no explicit reference to its requirements being jurisdictional in nature and never uses the word "jurisdiction." Instead, it merely states that an involuntary bankruptcy case "is commenced against a person by the filing with the bankruptcy court of a petition under chapter 7 or 11" that meets certain requirements. 11 U.S.C. § 303(b).

Further, this Court has interpreted similar "commencement of a case" language, found elsewhere in the Bankruptcy Code, to be non-jurisdictional. In Pugh v. Brook (In re Pugh), 158 F.3d 530 (11th Cir. 1998), we examined 11 U.S.C. §§ 546(a) and 549(d), which establish limitations periods on a bankruptcy trustee's commencement of adversary proceedings to avoid certain pre- and post-petition transfers, liens, and offsets involving the debtor's assets. We considered whether § 546(a) and § 549(d) "operate to divest a bankruptcy court of subject matter jurisdiction once they have elapsed, or . . . constitute statutes of limitations that can

16

be waived." Pugh, 158 F.3d at 530. Section 546(a) provided, at the time the Pugh bankruptcy case began, that "[a]n action or proceeding under section 544, 545, 547, 548, or 553 of this title [governing the trustee's authority to avoid certain pre-petition transactions involving the debtor's assets] may not be commenced after the earlier of–(1) two years after the appointment of a trustee . . . or (2) the time the [bankruptcy] case is closed or dismissed." 11 U.S.C. § 546(a) (1988). Section 549(d) provided (and still provides) that "[a]n action or proceeding [to avoid post-petition transfers] may not be commenced after the earlier of–(1) two years after the date of the transfer sought to be avoided; or (2) the time the [bankruptcy] case is closed or dismissed." Id. § 549(d). Sections 546(a) and 549(d) are similar to § 303(b) in that both statutes expressly provide conditions under which a proceeding under Title 11 may be "commenced."

In Pugh, the debtors lost an avoidance action to which they had not raised the limitations defense, and on appeal they argued that the limitations periods established in §§ 546(a) and 549(d) were subject matter jurisdictional, such that the failure to earlier raise them could not constitute a waiver. Pugh, 158 F.3d at 530-32. This Court acknowledged that we had not considered the question before, but that there was a split of authority elsewhere regarding

> whether these code provisions constitute grants of subject matter jurisdiction that leave a court without any authority to hear certain

17

> proceedings–i.e., that extinguish the right of action itself by divesting a court of its subject matter jurisdiction over certain proceedings–after the limitations period has elapsed, or whether they are true statutes of limitations that restrict the power of a court to grant certain remedies in a proceeding over which it has subject matter jurisdiction.

Id. at 533-34.

After considering the statutory language, existing authority, legislative history, and overall statutory scheme, this Court in Pugh concluded that §§ 546(a) and 549(d) are waivable statutes of limitation rather than restrictions on the bankruptcy courts' subject matter jurisdiction. See id. at 534-38. Among other things, we relied upon the fact that the subject matter jurisdiction of the bankruptcy courts derives from 28 U.S.C. § 157, and that neither § 546(a) nor § 549(d) explicitly refers to jurisdiction. Id. at 538. Thus, we concluded that statutory conditions within the Bankruptcy Code upon the "commence[ment]" of a bankruptcy action are not subject matter jurisdictional. 11 U.S.C. §§ 546(a), 549(d); Pugh, 158 F.3d at 532-33. The reasons in Pugh apply equally to § 303(b).

Second, the conclusion that § 303(b) is non-jurisdictional comports with the bankruptcy-related jurisdictional grant in Title 28, as well as the basic nature of subject matter jurisdiction. See 28 U.S.C. § 157(a) (authorizing bankruptcy courts to hear and determine "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11"). Subject

18

matter jurisdiction, as mentioned above, is the statutorily conferred power of the court to hear a class of cases. Kontrick, 540 U.S. at 455, 124 S. Ct. at 915. As a class of cases, involuntary bankruptcy cases unquestionably arise under Title 11 (the Bankruptcy Code) and thus fall within the congressional grant of subject matter jurisdiction to the bankruptcy courts.

Third, there is no indication from the text of § 303 that Congress intended bankruptcy courts to consider sua sponte at any point in the proceedings whether the involuntary petition filing requirements have been met. In fact, the statutory language strongly suggests the opposite. Section 303(h) provides that if an involuntary petition "is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed." 11 U.S.C. § 303(h) (emphasis added); accord Fed. R. Bankr. P. 1013(b) ("If no pleading or other defense to a petition is filed within the time provided . . ., the court, on the next day, or as soon thereafter as practicable, shall enter an order for the relief requested in the petition."). Thus, the statutory scheme contemplates that relief will be granted immediately if no timely response is filed. Section 303(h) belies any congressional intent to have courts sua sponte consider whether the § 303(b) requirements have been satisfied.

Furthermore, § 303(c) suggests that Congress did not intend the § 303(b)

19

requirements to be necessary to the bankruptcy courts' subject matter jurisdiction.

Section 303(c) states that a creditor who has not joined an involuntary petition may

be added as a petitioning creditor "before the case is dismissed or relief is

ordered." 11 U.S.C. § 303(c). The statute therefore grants the court the power to

permit one or more creditors to join a petition that may otherwise be dismissed.

But, it seems anomalous at best to conclude that a bankruptcy court, which lacks

jurisdiction over an involuntary case because the petition was defectively filed,

subsequently may create jurisdiction for itself by permitting additional creditors to

join the petition.

Trusted Net contends that the issue of whether § 303(b)'s requirements are

subject matter jurisdictional is controlled by the Supreme Court's decision in

Canute Steamship Co. v. Pittsburgh & West Virginia Coal Co., 263 U.S. 244, 44 S.

Ct. 67 (1923). In Canute, three creditors filed an involuntary bankruptcy petition

under the Bankruptcy Act of 1898,[6] which required, inter alia, that the debtor in an

involuntary case have committed an act of bankruptcy within four months before

---

[6]Before 1979, bankruptcy rights and actions were governed by the Bankruptcy Act of 1898 (the "Act"). Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. v. Alvarez (In re Alvarez), 224 F.3d 1273, 1278 n.13 (11th Cir. 2000). Effective October 1, 1979, the Act was repealed and replaced by the current Bankruptcy Code (the "Code"). Id.; Mitsubishi Int'l Corp. v. Clark Pipe & Supply Co., 735 F.2d 160, 162 n.2 (5th Cir. 1984).

the petition's filing.  Id. at 245, 247, 44 S. Ct. at 67-68.[7]  Seven months after the petition was filed, four additional creditors intervened; two joined the petition and two opposed it.  Id. at 245-46, 44 S. Ct. at 67.  The opposing creditors argued that the petition "could not properly be sustained" because one of the original petitioning creditors had not actually been a creditor of the debtor, and the two intervening creditors who joined the petition had not done so within four months of the alleged act of bankruptcy.  Id. at 246-47, 44 S. Ct. at 67-68.  The Supreme Court rejected this argument, stating:

> [T]he filing of a petition, sufficient upon its face, by three petitioners alleging that they are creditors holding provable claims of the requisite amount, the insolvency of the defendant and the commission of an act of bankruptcy within the preceding four months, clearly gives the bankruptcy court jurisdiction of the proceeding.

Id. at 248, 44 S. Ct. at 68.

Trusted Net seizes on this language, arguing that Canute indicates that § 303(b)'s requirements are subject matter jurisdictional.  But we do not read the Supreme Court's use of the word "jurisdiction" in Canute to mean that the involuntary petition requirements at issue there were a matter of subject matter

---

[7]Section 59b of the Act, which was also at issue in Canute, is similar, though not identical, to § 303(b) of the Code.  Section 59b provided, "Three or more creditors who have provable claims against any person which amount in the aggregate, in excess of the value of securities held by them, if any, to five hundred dollars or over; or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt."  Bankruptcy Act of 1898, § 59b, 30 Stat. 544, 561.

jurisdiction. As the Supreme Court recently noted, "the word 'jurisdiction' does not in every context connote subject-matter jurisdiction." Rockwell, 127 S. Ct. at 1405; see also Steel Co., 523 U.S. at 90, 118 S. Ct. at 1010 (holding that the elements of a cause of action were not subject matter jurisdictional simply because the statute that created the cause of action provided that district courts "shall have jurisdiction" of such actions). And the Supreme Court in Canute, in the sentence immediately following its reference to "jurisdiction," stated that "under Section 59b, . . . it is indispensable to the maintenance of the petition that the existence of three petitioners holding provable claims be established, if challenged . . . ." Canute, 263 U.S. at 248, 44 S. Ct. at 68 (emphasis added). The Supreme Court's limiting language "if challenged" and "sufficient on its face" forecloses the possibility that it meant the petition requirements were subject matter jurisdictional. If they truly were necessary for subject matter jurisdiction, the failure to satisfy the requirements would deprive the bankruptcy court of jurisdiction even if no party raised a challenge and even if the petition was outwardly sufficient. In any event, § 303(b) itself does not speak in jurisdictional terms or refer to jurisdiction in any way. Applying the Supreme Court's more recent Arbaugh test, § 303(b)'s requirements are not subject matter jurisdictional.

### III. CONCLUSION

22

In sum, we conclude that 11 U.S.C. § 303(b) does not implicate subject matter jurisdiction. Accordingly, Trusted Net's objection to the involuntary petition on grounds of non-compliance with § 303(b) was waived. To the extent that the former Fifth Circuit's decision in <u>All Media</u> indicates that the § 303(b) elements are jurisdictional, we overrule it. We affirm the district court's order affirming the bankruptcy court's denial on waiver grounds of Trusted Net's motion to dismiss.

**AFFIRMED.**