[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-15688

————————————————

Agency No. A200-118-948

ROSA AMELIA REYES-ALMENDAREZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

————————————————

(December 2, 2014)

Before HULL and MARCUS, Circuit Judges, and TOTENBERG,[*] District Judge.

PER CURIAM:

———————————————

[*]Honorable Amy Totenberg, United States District Judge for the Northern District of
Georgia, sitting by designation.

Rosa Reyes-Almendarez seeks review of the Board of Immigration Appeals's ("BIA") order affirming the immigration judge's ("IJ") denial of her motion to reopen her in absentia removal proceedings, filed pursuant to 8 C.F.R. § 1003.2(c).  After review and oral argument, we dismiss in part and deny in part Reyes-Almendarez's petition for review.

## I.  BACKGROUND

### A.    2005 Notice to Appear

Reyes-Almendarez is a native and citizen of Honduras.  After midnight on September 12, 2005, Reyes-Almendarez waded across the Rio Grande River near Brownsville, Texas.  Almost immediately upon entry, federal agents arrested Reyes-Almendarez for illegally entering the United States and advised her of her rights in her native language.

The border patrol agents then prepared two documents: (1) a Form I-862 Notice to Appear in removal proceedings ("NTA"), and (2) a Form I-213 Record of Deportable/Inadmissible Alien ("I-213 Form") summarizing Reyes-Almendarez's arrest and brief detention.  The NTA, dated September 12, 2005, is three pages and charged Reyes-Almendarez with removability as an alien who was present in the United States without being admitted or paroled, under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i).  The

2

first and third pages of the NTA are signed by Supervisory Border Patrol Agent Samuel Flores.

The NTA ordered Reyes-Almendarez "to appear before an immigration judge of the United States Department of Justice at: Martin Luther King Jr. Fed Bldg 77 Forsyth St SW Rm 112 Atlanta Georgia US 30303."  The NTA noted that the date and time of Reyes-Almendarez's removal hearing would be determined at a later date, and that notice of the hearing would be mailed to the address provided by Reyes-Almendarez.  The NTA listed "86 Pearl Ln. Chamblee Georgia 30341" as Reyes-Almendarez's current residence.

A block entitled "Certificate of Service" on the second page of the NTA is signed by Reyes-Almendarez and bears her fingerprint.[1]  The certificate of service stated that Border Patrol Agent Lance McQueen served the NTA on Reyes-Almendarez in person on September 12, 2005.  The certificate of service also stated that Reyes-Almendarez "was provided oral notice in the Spanish language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act."

B.    I-213 Form

Agent McQueen prepared and signed the I-213 Form on September 12, 2005.  According to the I-213 Form, agents gave Reyes-Almendarez a warrant of

---

[1]As discussed later, DHS did not file this certificate of service until Reyes-Almendarez filed her motion to reopen her removal order.

arrest/NTA before she was released on her own recognizance around 5:00 A.M. on September 12, 2005, due to lack of camp space. The I-213 Form stated that Reyes-Almendarez intended to live and work in Georgia at the following address: 86 Pearl Lane, Chamblee, GA, 30341. Accordingly, as did the NTA above, the I-213 Form listed the Chamblee, GA address as Reyes-Almendarez's mailing address.

The I-213 Form included a "Failure to Appear" provision, which advised Reyes-Almendarez of the following: she was required to notify the immigration court immediately if her mailing address changed; any notice concerning the date, time, and location of her removal hearing would be mailed to the address she provided; her actual receipt of the mailed Notice of Hearing ("NOH") was unnecessary if she failed to provide a current address; and her failure to appear at the scheduled hearing could result in the entry of a removal order in her absence.

## C.    October 2005 Removal Proceeding

On October 18, 2005, the Department of Homeland Security ("DHS") filed with the Atlanta immigration court the September 12, 2005 NTA charging Reyes-Almendarez as removable. As noted above, this NTA had been served on Reyes-Almendarez at the border on September 12, 2005. However, back in 2005, DHS did not file the certificate of service executed by Reyes-Almendarez with this NTA. Instead, DHS filed a certificate of service signed by an individual named

4

Andres Olivo Salmeron, indicating that Salmeron was personally served with an NTA on May 18, 2005.

On August 15, 2006, the immigration court sent an NOH via regular mail to Reyes-Almendarez at the Chamblee, GA address listed on both the I-213 Form and the NTA.  The NOH scheduled Reyes-Almendarez's removal hearing for September 5, 2006, in Atlanta.  However, the record indicates that the Postal Service returned the NOH as undeliverable.

Reyes-Almendarez did not appear at her scheduled hearing.  Accordingly, on September 5, 2006, an IJ ordered Reyes-Almendarez removed in absentia.  The IJ stated that jurisdiction over the matter was established by the filing of the NTA and by service of the NTA on Reyes-Almendarez.  The IJ also found that DHS had sent to Reyes-Almendarez (at the Chamblee, GA address) written notice of the date, time, and location of her removal hearing as well as the consequences of failing to appear, and that DHS established the truth of the factual allegations in the NTA charging Reyes-Almendarez as removable.  Reyes-Almendarez did not appeal the in absentia removal order to the BIA.

**D.    2011 Motion to Reopen**

Over five years later, on December 7, 2011, Reyes-Almendarez filed a counseled motion to reopen proceedings, alleging that she lacked proper written notice under INA § 239(a)(1), 8 U.S.C. § 1229(a)(1).  On July 23, 2011, Reyes-

5

Almendarez had been detained by police, at which time she contends that she learned for the first time about the in absentia removal order against her.

In her 2011 motion to reopen, Reyes-Almendarez argued that DHS filed the incorrect certificate of service before the removal hearing, and thus failed to show by clear, unequivocal, and convincing evidence that she was served with the NTA. She argued that the deficiency in the original 2006 record deprived the IJ of any "jurisdiction" to proceed in absentia. Although the correct NTA was filed and even if she had been served with that NTA at the border, Reyes-Almendarez argued that DHS had not filed the correct certificate of service, and thus the IJ had no power or jurisdiction to act.

In support of her motion to reopen, Reyes-Almendarez filed documents from the 2006 record, including: her I-213 Form, the September 12, 2005 NTA, the certificate of service on Salmeron, and the undeliverable NOH.

Reyes-Almendarez also filed an affidavit, in which she affirmed that, although she signed some documents while being detained in September 2005, she "[did] not recall what documents [she] signed and [did] not have any recollection of any documents being given to [her] upon [her immediate] release." Reyes-Almendarez stated that she did not recall receiving the NTA, signing the certificate of service, or getting any notice of an immigration court hearing. She did not

know Salmeron, and the Chamblee, GA address listed on the NTA was given to her brother from someone in Honduras.

Along with her motion to reopen, Reyes-Almendarez filed a change of address form, dated December 6, 2011. The form replaced the Chamblee, GA address listed on the I-213 Form and the NTA with an address in Atlanta, GA. Reyes-Almendarez's affidavit did not expressly explain why she failed to notify the immigration court of her address change until over six years after providing the Chamblee, GA address listed on the NTA and the I-213 Form.

In response to Reyes-Almendarez's motion to reopen, DHS argued that (1) notice of the hearing was properly provided to her last known address, and (2) a complete copy of the NTA, with the correct certificate of service, attached as an exhibit, clearly showed that Reyes-Almendarez was personally served with the 2005 NTA charging her as removable on September 12, 2005, the day it was prepared. The complete and correct NTA included a certificate of service bearing Reyes-Almendarez's signature and fingerprint. The correct certificate of service also included the same "Failure to Appear" provision found on the I-213 Form, which advised Reyes-Almendarez of her obligation to report any change of address and warned her of the in absentia consequences of a failure to appear at the hearing.

7

On October 22, 2012, a different IJ denied Reyes-Almendarez's motion to reopen for two reasons. First, the evidence (including the correct certificate of service) submitted at the motion to reopen stage showed that Reyes-Almendarez was personally served with the NTA on September 12, 2005. Personal service on Reyes-Almendarez was affirmatively established by: (1) the certificate of service bearing Reyes-Almendarez's signature and fingerprint, and (2) the I-213 Form submitted by Reyes-Almendarez herself, which stated that she was given a copy of the NTA before her release. The IJ rejected Reyes-Almendarez's jurisdictional argument, finding that the government cured any defect in the 2006 record by filing the correct certificate of service in response to Reyes-Almendarez's motion to reopen.

Second, personal delivery of the NTA was sufficient to establish actual notice of removal proceedings regardless of the fact that the Postal Service returned the NOH as undeliverable to Reyes-Almendarez at the Chamblee, GA address she gave. Reyes-Almendarez had an obligation to promptly notify the immigration court of her new address in Georgia and failed to do so until more than six years after providing the Chamblee, GA address listed in the NTA, to which her hearing notice was mailed on August 15, 2006.[2] Reyes-Almendarez

---

[2]The new address that Reyes-Almendarez gave in 2011—38 Hidden Valley Drive, Atlanta, GA, 30180—is approximately 50 miles from the Chamblee, GA address she gave in

8

also did not explain her failure to update her address or otherwise exercise due diligence in attempting to resolve her case.

Reyes-Almendarez appealed the IJ's denial of her motion to reopen to the BIA.  Reyes-Almendarez's counseled notice of appeal and supporting brief to the BIA raised two grounds for reopening: (1) the IJ lacked "jurisdiction" to enter the in absentia removal order because the court record at the time of the order's issuance failed to establish service of the NTA on Reyes-Almendarez, and (2) Reyes-Almendarez did not receive proper notice of her hearing.[3]

On November 18, 2013, the BIA summarily affirmed the IJ's denial of Reyes-Almendarez's motion to reopen without issuing an opinion, pursuant to 8 C.F.R. § 1003.1(e)(4).  Reyes-Almendarez timely filed this petition for review.

## II.  STANDARD OF REVIEW

Where, as here, the BIA summarily affirms an IJ's order without opinion, we review the IJ's order as the final agency decision.  See Alim v. Gonzales, 446 F.3d 1239, 1254 (11th Cir. 2006).

---

2005 (86 Pearl Lane, Chamblee, GA, 30341).  Hidden Valley Drive is technically located in the city of Villa Rica, GA, west of Atlanta, GA.

[3]There is a question whether Reyes-Almendarez adequately raised a due process violation as a separate issue in her administrative appeal to the BIA.  Even assuming the claim was exhausted, it fails because, as discussed below, (1) the IJ had jurisdiction to proceed in absentia and (2) Reyes-Almendarez did not show that she lacked written notice.

We review the IJ's denial of a motion to reopen for abuse of discretion. Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256 (11th Cir. 2009). Our review is limited to determining whether the IJ exercised his discretion in an arbitrary or capricious manner. See id.

In the context of a motion to reopen, whether an alien received sufficient notice of his removal hearing is an issue of fact. See Contreras–Rodriguez v. U.S. Att'y Gen., 462 F.3d 1314, 1317 (11th Cir. 2006). "We review administrative fact findings for substantial evidence," and an IJ's factual findings are conclusive unless the record "compels" reversal. Ayala v. U.S. Att'y Gen., 605 F.3d 941, 947-48 (11th Cir. 2010). Legal determinations are reviewed de novo. Id. at 948.

### III.  DISCUSSION

We first review the relevant law regarding written notice of a removal hearing and in absentia removal.

### A.    Written Notice Requirement

In removal proceedings conducted under § 1229a, an alien must be given "written notice (in this section referred to as a 'notice to appear')" containing certain information. INA § 239(a)(1), 8 U.S.C. § 1229(a)(1). In relevant part, the written notice must specify (1) the alien's obligation to "immediately provide (or have provided) the Attorney General with a written record of an address" at which she may be contacted, (2) the alien's obligation to immediately provide "a written

10

record of any change of the alien's address," and (3) the consequences under the <u>in absentia</u> provisions in § 1229a(b)(5) of failing to provide address information. INA § 239(a)(1)(F), 8 U.S.C. § 1229(a)(1)(F).[4]  The written notice must also include the time and place at which the proceedings will be held and the consequences under the <u>in absentia</u> provisions of failing to appear as directed. INA § 239(a)(1)(G), 8 U.S.C. § 1229(a)(1)(G).

Where practicable, the NTA will specify the time, place, and date of the initial removal hearing.  8 C.F.R. § 1003.18(b).  However, if the NTA does not contain that information, the immigration court is responsible for scheduling the hearing and providing notice to the parties of the time, place, and date of the hearing.  <u>Id.</u>

The written notice required by § 1229(a)(1) "shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)."  INA § 239(a)(1), 8 U.S.C. § 1229(a)(1).  Service by mail of the written notice is sufficient if "there is proof of attempted delivery <u>to the last address provided by the alien</u> in accordance with [§ 1229(a)(1)(F)]."  INA § 239(c), 8 U.S.C. § 1229(c) (emphasis added).

**B.    Removal <u>In Absentia</u>**

---

[4]The written notice must also include the following: (1) "[t]he nature of the proceedings"; (2) "[t]he legal authority under which the proceedings are conducted"; (3) "[t]he acts or conduct alleged to be in violation of law"; (4) "[t]he charges against the alien and the statutory provisions alleged to have been violated"; and (5) the alien's rights with respect to counsel.  INA § 239(a)(1)(A)-(E), 8 U.S.C. § 1229(a)(1)(A)-(E).

11

An alien who, after being given the written notice required by § 1229(a)(1), fails to attend her removal hearing shall be ordered removed <u>in absentia</u> if DHS establishes by "clear, unequivocal, and convincing evidence" that written notice was provided to the alien and that the alien is removable.  INA § 240(b)(5)(A), 8 U.S.C. § 1229a(b)(5)(A); <u>see</u> <u>also</u> 8 C.F.R. § 1003.26(c) (requiring DHS to establish that written notice of the time and place of proceedings, as well as the consequences of failure to appear, was provided to the alien).  For <u>in absentia</u> purposes, written notice is sufficient if sent to the most recent address provided by the alien under § 1229(a)(1)(F).  INA § 240(b)(5)(A), 8 U.S.C. § 1229a(b)(5)(A); <u>see</u> <u>also</u> 8 C.F.R. § 1003.26(d).

Following entry of an <u>in absentia</u> removal order, an alien may seek rescission of the order via a motion to reopen by showing that she "did not receive notice in accordance with [§ 1229(a)(1)]." INA § 240(b)(5)(C)(ii), 8 U.S.C. § 1229a(b)(5)(C)(ii).  The alien must submit "affidavits or other evidentiary material" in support of her motion to reopen.  INA § 240(b)(5)(C)(ii), (c)(7)(B), 8 U.S.C. § 1229a(b)(5)(C)(ii), (c)(7)(B).

## C.    Reyes-Almendarez Failed to Show Lack of Written Notice

Here, Reyes-Almendarez argues that the IJ abused his discretion in denying her motion to reopen because she was not given proper written notice of removal

proceedings or the statutory obligation to provide the immigration court with an updated address.  The record, however, belies her claims.

In ruling on the motion to reopen, the IJ considered (1) the complete copy of the NTA submitted by DHS, which included the correct certificate of service bearing Reyes-Almendarez's signature and fingerprint, (2) the I-213 Form, which stated that agents gave her the NTA before her release on September 12, 2005, and (3) Reyes-Almendarez's affidavit, in which she merely asserted that she did not "recall" receiving the NTA.  We conclude that substantial evidence supports the IJ's findings that Reyes-Almendarez was personally served with the NTA while detained on September 12, 2005, and that personal service was sufficient to establish the written notice of removal proceedings required by § 1229(a)(1).  See Ayala, 605 F.3d at 947-48.

Furthermore, Reyes-Almendarez failed to show lack of written notice by attacking the sufficiency of the subsequent NOH.  The NTA initiating her removal proceedings, which the record indicates Reyes-Almendarez received on September 12, 2005, included the "Failure to Appear" provision advising Reyes-Almendarez of her statutory obligation to update her address and the in absentia consequences of failing to do so, in accordance with § 1229(a)(1)(F).  Thus, the duty to provide the immigration court with an updated address attached upon personal service of

13

the NTA on Reyes-Almendarez.  See Matter of Anyelo, 25 I. & N. Dec. 337, 338-39 (BIA 2010).

Reyes-Almendarez did not provide a change of address pursuant to this known duty until over five years after her removal hearing, and is therefore precluded from claiming that she did not receive notice.  See Dominguez v. U.S. Att'y Gen., 284 F.3d 1258, 1260 (11th Cir. 2002) ("[N]otice [mailed] to the alien at the most recent address provided by the alien is sufficient notice" for in absentia removal.).  Because the immigration court properly mailed the NOH to the most recent address provided by Reyes-Almendarez—the Chamblee, GA address listed on the NTA and the I-213 Form—she could not rely on the fact that the NOH was returned by the Postal Service as undeliverable.  See INA § 240(b)(5)(A), 8 U.S.C. § 1229a(b)(5)(A).  In sum, the IJ was within his discretion in finding that Reyes-Almendarez received sufficient notice to allow for in absentia proceedings.

**D.    Jurisdiction**

Even if written notice mailed to her Chamblee, GA address was sufficient, Reyes-Almendarez's motion to reopen argued that the first IJ lacked "jurisdiction" in 2006 to order her removed in absentia.  Reyes-Almendarez's motion contended that, at the time of the September 5, 2006 removal order, the actual administrative record before the first IJ contained an incorrect certificate of service signed by Salmeron.  In opposition to Reyes-Almendarez's motion to reopen, DHS filed the

14

correct certificate of service signed by Reyes-Almendarez, showing she received the NTA in 2005. Even though she was in fact served with the NTA back in 2005 when the NTA was filed, Reyes-Almendarez argues that the administrative record in 2006 did not include the correct certificate of service, and thus the first IJ lacked "jurisdiction" to act or rule in any way. We disagree.

Congress has granted immigration judges the authority to conduct removal proceedings under INA § 240, 8 U.S.C. § 1229a. See INA § 101(b)(4), 8 U.S.C. § 1101(b)(4); see also INA § 240(a)(1), 8 U.S.C. § 1229a(a)(1). The regulations governing initiation of these removal proceedings provide that "[e]very removal proceeding conducted under [§ 1229a] . . . is commenced by the filing of a notice to appear with the immigration court." 8 C.F.R. § 1239.1(a).

In addition, the rules of procedure for immigration courts state that "[j]urisdiction vests, and proceedings before an [IJ] commence, when a charging document is filed with the Immigration Court by [DHS]." 8 C.F.R. § 1003.14(a) (located within a subpart entitled "Immigration Court—Rules of Procedure"). Furthermore, the rules state that "[t]he charging document must include a certificate showing service on the opposing party pursuant to § 1003.32[5] which indicates the Immigration Court in which the charging document is filed." Id.; see

---

[5]Section 1003.32(a) requires "[a] certification showing service . . . on a date certain [to] accompany any filing with the [IJ] unless service is made on the record during the hearing." 8 C.F.R. § 1003.32(a).

15

id. § 1003.13 (defining "charging document" to include a NTA and "filing" as the "actual receipt of a document by the appropriate Immigration Court").

Here, it is undisputed that DHS filed a charging document—the NTA against Reyes-Almendarez—with the immigration court on October 18, 2005. Thus, Reyes-Almendarez's removal proceedings commenced before the IJ on that date. Importantly, the record also establishes that Reyes-Almendarez was personally served with the NTA on September 12, 2005, prior to the commencement of her removal proceedings on October 18, 2005, and that Reyes-Almendarez signed the correct certificate of service acknowledging that actual service.

We recognize that the parties debate whether the filing of the incorrect certificate of service, as opposed to one Reyes-Almendarez signed, was a claims-processing error or triggered a lack of jurisdiction that prevented the IJ from acting at all. See Arbaugh v. Y & H Corp., 546 U.S. 500, 515-16, 126 S. Ct. 1235, 1245 (2006) (absent a clear statement from Congress to the contrary, "courts should treat the [statutory] restriction as nonjurisdictional in character"); Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 90-91, 118 S. Ct. 1003, 1010-11 (1998) (observing that "jurisdiction" is "a word of many, too many, meanings" and does not always mean subject matter jurisdiction (quotation marks omitted)); see also Trusted Net Media Holdings, LLC v. The Morrison Agency, Inc. (In re Trusted Net Media

16

Holdings, LLC), 550 F.3d 1035, 1042-46 (11th Cir. 2008) (en banc) (applying

Arbaugh to hold that the prerequisites for commencing an involuntary bankruptcy

petition in 11 U.S.C. § 303(b) were not jurisdictional, in accordance with prior

interpretations of "commencement of a case" language found elsewhere in the

Bankruptcy Code).

 We need not characterize the DHS's administrative error, which occurred

after Reyes-Almendarez was personally served with the NTA and signed the

certificate of service, because the error, in any event, was curable and was cured.

The complete NTA filed in response to Reyes-Almendarez's motion to reopen

cured the error.  Again, Reyes-Almendarez does not deny that she received the

NTA before her removal hearing.  To vacate the IJ's order on the basis of an

administrative paperwork error would be an unduly "mechanical" application of

the procedural rules.  See Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210,

1222 (11th Cir. 2009).

## IV.  CONCLUSION

 We conclude that the IJ did not abuse his discretion in denying Reyes-

Almendarez's motion to reopen for lack of notice.  Accordingly, we deny her

petition for review.

 **PETITION DENIED.**

17